HAYES v. OSBORN.

No. 31829.   June 26, 1945.

*160 P. 2d 956.*

Robert O. Swimmer, of Oklahoma City, for plaintiff in error.

Arthur H. Dolman, of Oklahoma City, for defendant in error.

GIBSON, C.J. This is an appeal from a judgment in favor of defendant in error, hereinafter referred to as plaintiff, against plaintiff in error, hereinafter referred to as defendant.

Plaintiff sued defendant in justice of the peace court to recover $50 and reasonable attorney's fees, and from judgment awarded plaintiff defendant appealed to the court of common pleas, where said cause was tried de novo to a jury resulting in judgment in favor of the plaintiff for the principal sum of $50 and $75 as attorney's fees.

It is alleged in the bill of particulars that plaintiff was compelled to pay $3.50 per week from November 1, 1942, to and including May 20, 1943, for rent of room No. 20 in the Havlin Hotel operated by the defendant; that, by reason of Maximum Rent Regulation 54-A, section 1388-334 of the Office of Price Administration under Emergency Price Control Act of 1942, Title 1, section 2, approved January 30, 1942, and effective November 1, 1942, the rent ceiling for said room was $3, same being the rent charged and collected by said defendant on said room per week on March 1, 1942; and that by reason thereof defendant became liable to plaintiff in a sum treble the amount of the ex-

cess rent so paid, or the sum of $50, whichever be greater, together with reasonable attorney's fees to be fixed by the court.

Defendant's answer was a general denial of the allegations of plaintiff's petition.

Of the eight assignments of error set out in petition in error, only the second, fourth, and seventh are presented and supported by argument. The assignments not presented will not be considered (Harrington v. City of Tulsa, 170 Okla. 20, 39 P. 2d 120).

Assignments second and fourth, dealing with the court's instructions, are presented under the following proposition:

"In an action for treble damages or penalty under Emergency Price Control Act of 1942 for charging rent on hotel room in excess of maximum allowed under regulations made pursuant to Executive Order No. 5, issued by the President of the United States October 22, 1942, recorded in 7 Federal Registry No. 8596, freezing rents effective November 1, 1942, it is a defense that the omission to charge the correct rate was done in good faith pursuant to price schedule thereunder, and where there is evidence from which the jury might reasonably conclude that there was no intention to violate the act it is the duty of the court to submit the issue to the jury."

In support of this proposition reliance is placed upon the express provisions of Title 50, App. U. S. C. A., section 925 (d). It is contended that by reason of such provisions there was no liability for damages where one violating the regulation acted in good faith, and therefore the instructions of the court directing liability to turn upon the question whether the law was violated as alleged without submitting to the jury the question of defendant's good faith constituted fundamental error.

This contention involves a misinterpretation of the section mentioned, which by its express terms has reference to liability that might otherwise exist

in respect to things done or omitted in pursuance of the requirements of the act, and has no reference to things done in violation of such requirements for which remedies are prescribed, and hence affords no support to the contention.

Section 205 (e) of the Emergency Control Act provides:

"If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, the person who buys such commodity for use or consumption other than in the course of trade or business may bring an action either for $50 or for treble the amount by which the consideration exceeded the applicable maximum price, whichever is the greater, plus reasonable attorney's fees and costs as determined by the court. For the purposes of this section the payment or receipt of rent for defense-area housing accommodations shall be deemed the buying or selling of a commodity, as the case may be."

And 50 U. S. C. A. App. section 925 (e), after fixing the time in which such action may be brought, further provides:

"In such action, the seller shall be liable for reasonable attorney's fees and costs as determined by the court, plus whichever of the following sums is the greater: (1) Such amount not more than three times the amount of the overcharge, or the overcharges, upon which the action is based as the court in its discretion may determine, or (2) an amount not less than $25 nor more than $50, as the court in its discretion may determine: Provided, however, That such amount shall be the amount of the overcharge or overcharges or $25, whichever is greater, if the defendant proves that the violation of the regulation, order, or price schedule in question was neither willful nor the result of failure to take practicable precautions against the occurrence of the violation. For the purposes of this section the payment or receipt of rent for defense-area housing accommodations shall be deemed the buying or selling of a commodity, as the case may be; and the word 'overcharge' shall mean the amount by which the consideration exceeds the applicable maximum price."

The question presented, which necessarily involves a construction of the foregoing provisions, has been considered by several intermediate courts and in each court except one it was held that the seller or the landlord, as the case may be, was not relieved of liability by reason of good faith or unintentional violation. Everly v. Zepp (Dist. Ct. E. D. Pa.), 57 Fed. Supp. 303; Ward v. Bochino (S. C. Onandago County), 46 N. Y. Supp. 2d 54; Zwang v. A. & P. Food Stores (1944), 181 Misc. 375, 46 N. Y. Supp. 2d 747; Brown v. Cummins Distilleries Corporation (D. C. Ky. 1944), 53 Fed. Supp. 659. The court which held to the contrary was the Municipal Court of Appeals of the District of Columbia, which held by reason of the good faith of seller the recovery should be limited to $5, the actual amount of overcharge, rather than the statutory sum of $50. This holding was reversed by the U. S. C. A. District of Columbia, in Bowles, Price Adm'r, v. American Stores, Inc. (139 Fed. 2d 377) and certiorari denied by the U. S. Supreme Court (64 S. Ct. 947, 88 L. Ed. ——). The substance of the holding in the last cited case is that the phrase "may bring an action" appearing in section 205(e) is equivalent to "shall have a right of action for $50.00" and thus meaning a right to recover $50, and that there is nothing in said section 205(e) or the act itself that suggests that the right of recovery is limited to cases where the seller's violation of the act is willful. It is further held that, while the unqualified language of section 205(e) is sufficient to refute any question to the contrary, the language of section 925(e) further refutes it because the same sentence of the act, while saying nothing about reasonableness or discretion in regard to the award of $50, provides for the award of attorney's fees to be reasonable as determined by the court.

No question is presented on this appeal touching the judgment for attorney's fee or the method of fixing same.

The assignments of error presented under the aforesaid proposition are without merit.

The seventh assignment of error, to the effect that the court erred in rendering judgment for defendant in error, is presented under the following proposition:

"In an action for damages or penalty under Emergency Price Control Act of 1942 for charging rent in excess of the maximum allowed by law and executive orders and regulations and pursuant thereto where the evidence shows that the rent charged was in accordance with the registration, which was not contested by the tenant, no recovery can be had."

The substance of the argument presented is reflected in the following, which we quote from plaintiff in error's brief:

"The Office of Price Administration has exclusive jurisdiction to determine the maximum rent and not the courts. The maximum rent in this case as determined by the Office of Price Administration was $3.50 a week, just what he was charged and paid, according to his own evidence. In the case of Berndt v. Shaw (1942) Md. Peoples Ct. (OPA Service page 622:21), Amer. Law Reports Annotated 147, page 1462, it was held that where tenant sued under this provision, that there could be no recovery unless a ruling had been first obtained from the Office of Price Administration determining the maximum rent where there had been a dispute and that if the landlord failed to secure such determination it was the duty of the tenant to do so. One cannot come into court in an action for treble damage or penalty and determine what the maximum rent should be in that action."

The record fails to disclose facts that warrant the application of the doctrine declared. The fact that room 20, for which plaintiff was required to pay $3.50 per week, was rented for $3 per week previous to, on and following March 1, 1942, is clear, and same is true of other rooms of the same class, one of which was occupied by plaintiff during part of the said month. Plaintiff moved from the hotel during the latter part of that month and returned about October 15, 1942, when he began paying $3.50 per week, which continued throughout the period involved. On cross-examination plaintiff on being asked why he paid $3.50, knowing that the rate had previously been $3, testified that he was told by the manager that they had raised the rent. And in the same connection the following questions and answers were had:

"Q. And knowing full well that the price of the room had been quoted to you at three dollars, why, you paid $3.50? Mr. Dolman: Object to that, if the court please, as argument. The Court: Overruled and allowed an exception. A. I went on and paid it because Mr. Bynum and Mrs. Brooks told me Mrs. Hayes, had raised our rates. Q. You come in the hotel, knowing full well you had paid $3.00 before for room 20 or room 30, then you obtained room 20, and weren't you quite willing to pay $3.50? A. Well, I didn't argue about it. I thought at the time perhaps she had gotten a raise from the rent board and raised it, and I didn't find out until later on that she hadn't. Q. And when you found out she hadn't gotten a raise from the Office of Price Administration, you brought this suit, is that correct? A. That is right."

To bring the case within the doctrine attention is called to the fact that on December 15, 1942, defendant registered said room with the Office of Price Administration at $3.50 per week, at which time plaintiff was renting said room, and that subsequently, after the ownership of the hotel had changed, the Administrator, on application of the new owner and on consideration of improvements made, granted an increase of $1 per week over the $3.50 as registered. This increase was granted following an application dated August 5, 1943. The apparent recognition by the Administrator of the price of $3.50, as stated in the registration for the purpose of making the increase, appears to be the only basis for the statement quoted above, as follows: "The maximum rent in this case as determined by the Office of Price Administration was $3.50 per week,"

and the fact that this determination had not occurred at the time of the payment of $3.50 appears to be the basis of the charge that there was no right of recovery.

That the courts are without jurisdiction to establish maximum rent is true because, since same is to operate prospectively and establish rules of conduct, the function is a quasi-legislative function and it has been so held (Pratt v. Hollenbeck (1943; Pa. C. P.) OPA Service p. 622:109), but the question whether a maximum has been established and if so whether rights have been violated is clearly judicial in character.

The fact that the room was rented at $3 per week during the 30-day period ending March 1, 1942, brings the question of the maximum rent squarely within the provision of Maximum Rent Regulation 54-A (Part 1338, section 334[a]) and by reason of the force of said regulation the said sum of $3 became and continued to be such maximum until a change was made through action of the area administrator upon application of the landlord in pursuance of power so to do as provided in section 335 thereof. It is undisputed that no application was made or considered prior to that of the subsequent owner made in 1943, and it follows that $3 was the ceiling price for the room during the period unless the filing of such registration in December, 1942, and payment of rent at $3.50 named as rental therein had some effect thereon.

To hold that the act of registering a room at a price greater than that which by force of said regulation is the actual ceiling price is effective to change such ceiling, would supersede the requirements that modifications of basic rentals be had only on petition of landlord, and it was so held in Henderson v. Morgan (1943 D. C. Utah), 54 Fed. Supp. 441 (O.P.A. Service p. 622:72, and quoted in note 147 A. L. R. p. 1454). It was said:

"Registration certificates are required to put the rent director in possession of the facts in regard to the rental arrangements of each property, and be the better advised to take any action which he might desire to take. But it in no way supersedes the requirement for the landlord to petition for modification of basic rentals, or to assume that such statements represent a satisfactory adjustment, if for any reason there is a desire for a change in the basic rent of any premises fixed as of March 1, 1942. In order to secure any modification, it was obligatory upon the landlord to petition the rent director for any change sought to be made except in specific instances."

That the plaintiff on demand voluntarily paid the $3.50 per week is, in our opinion, of no moment. In Part 1388, section 332 of said Regulation, it is provided that no contract or obligation entered into before or after the effective date of said Regulation could impair the force of the ceiling price so fixed. In Henderson v. Detweiler (1942; D. C.), ——F. Supp.——, (O.P.A. Service page 622:28, and quoted in note 147 A. L. R. p. 1453), it was held that voluntary action on the part of the tenant in fixing a rental in excess of the maximum did not remove the rent from the control of the regulations. The court there said:

"It has been intimated that some measure of concern should be given to the circumstances that the contracts between these parties were entered into at least with a semblance of voluntary action. But the statute in express terms says that exactions of this character shall be unlawful regardless of any contract, agreement, lease, or other obligation heretofore or hereafter entered into. That is as it has to be, and there is nothing unique about it. Whether in wartime or peacetime, laws have made many contracts void."

In the instant case it is not reflected that the plaintiff in agreeing to pay the $3.50 had reason to believe that same was in violation of the ceiling fixed by law.

The judgment is affirmed.

HURST, V.C.J., and OSBORN, BAY-LESS, WELCH, CORN, DAVISON, and ARNOLD, JJ., concur.